NORTH CAROLINA

COUNTY OF DURHAM

COLLEEN MCCLEAN,

    *Plaintiff,*

v.

DUKE UNIVERSITY; SHEILA BRODERICK, *in her individual and official capacities, and* STEVEN THOMAS BISHOP, *in his individual capacity,*

    *Defendants.*

GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17-CVS-2901

**COMPLAINT**

JURY TRIAL DEMANDED

ROBERT EKSTRAND
*Ekstrand & Ekstrand LLP*
*110 Swift Avenue, 2nd Floor*
*Durham, NC 27705*
*(919) 416-4590*
*rce@ninthstreetlaw.com*
*Counsel for Plaintiff, Colleen McClean*

58459

## PARTIES, JURISDICTION & VENUE

1. Plaintiff COLLEEN MCCLEAN is a citizen and resident of Durham County, North Carolina.

2. Defendant DUKE UNIVERSITY ("Duke") is a corporate educational institution formed and existing under the laws of North Carolina with its principal place of business in Durham County, North Carolina. At all times relevant to this Complaint, Duke was engaged in the business of providing, operating, managing, and controlling the delivery of educational, medical, psychological, and other related support services to students, including Plaintiff, in the State of North Carolina.

3. Defendant SHEILA BRODERICK is sued in this action in her individual and official capacities. At all times relevant to this action, Ms. Broderick was a servant, employee, and/or agent of Duke, was acting in the course and scope of that service, employment, and agency and in furtherance of Duke's business interests. Upon information and belief, Ms. Broderick is a citizen and resident of Durham County, North Carolina.

4. Defendant STEVEN THOMAS BISHOP is sued in this action in his individual capacity. At all times relevant to this action, Mr. Bishop was not employed by Duke in any capacity and was acting in furtherance of his own interests. Upon information and belief, Mr. Bishop is a citizen and resident of Durham County, North Carolina.

5. This Court has personal jurisdiction over Duke University under N.C. Gen. Stat. § 1-75.4 because Duke University is a domestic corporation; it is engaged in substantial activity within this State; and this is an action claiming injury arising out of an act or omission within this State by Duke University.

6. This Court has personal jurisdiction over Defendants Broderick and Bishop because they reside in, transact business in, and can be found in Durham County North Carolina.

7. This Court has personal jurisdiction over all Defendants, a substantial portion of the Defendant's acts, omissions, and occurrences giving rise to Plaintiff's claims occurred in Durham County, North Carolina.

8. This Court has subject matter jurisdiction over this action because Plaintiff's claims arise under the laws of the State of North Carolina.

9. Venue is proper in Durham County under G.S. § 1-82 because Plaintiff resides there, Defendants reside there, and Defendants regularly conduct business there.

10. The Superior Court is the proper division of the General Court of Justice to adjudicate this action because the amount in controversy exceeds $ 25,000 exclusive of interest and costs.

11. Plaintiff originally commenced this action on April 24 by filing an Application and Order and causing summonses to issue to each Defendant pursuant to Rule 3 of the North Carolina Rule of Civil Procedure.

**FACTS**

12. Plaintiff was raped and sexually assaulted by Defendant Steven Bishop. The assault including Bishop covering Plaintiff's mouth, strangling her, and raping her.

13. Plaintiff reported the assault to police as a blind report.

14. At the time, Plaintiff was enrolled as a graduate student in Duke University.

15. At the time of the assault, Duke University's Gender Violence Interventions Service Coordinator, was Defendant Sheila Broderick.

16. After the rape and sexual assault, Defendant Bishop told Plaintiff that Defendant Broderick was his "girlfriend" and threatened Plaintiff in several ways, yelling violently at Plaintiff when he did so.

17. Defendant Broderick was Duke University's Coordinator of Gender Violence Intervention Services, was living with Defendant Bishop in his home, and was seeing patients in his home at the time that Bishop raped and subsequently threatened and harassed Plaintiff.

18. Days later, Mr. Bishop told Plaintiff that Ms. Broderick and he had "looked [her] up in the system" at Duke via Ms. Broderick's access privileges, that he "knew things about [Plaintiff]", that he "knew where [Plaintiff] lived", that they (Broderick and Bishop) would "make [Plaintiff] be quiet if [she] said anything" and that "no one would believe [Plaintiff] because Sheila [Broderick] was his girlfriend."

19. Bishop continued to harass, threaten, and taunt Plaintiff in communications to Plaintiff, including a communication that included Defendant Broderick's work phone number, advising Plaintiff to contact Ms. Broderick.

20. In the ensuing months – continuing to this day – Defendants Broderick, Bishop, and other Duke employees and agents acting in concert with them, engaged in a course of conduct to threaten, harass, intimidate, and disparage Plaintiff in retaliation for Plaintiff's complaint reporting Bishop's rape of her and to prevent any investigation into the criminal conduct. The specific acts in furtherance of their agreement to undertake that course of conduct are described below and/or will be shown at trial.

- 4 -

21. Duke University is an "educational institution" that operates "education program[s] . . . receiving Federal financial assistance" as those phrases are used in Title IX and 20 U.S.C. § 1681, *et seq.*

22. Duke University is therefore obligated to comply with Title IX as well as the rules, regulations, and guidance promulgated by the United States Department of Education to implement and enforce Title IX.

23. Officials and employees authorized to respond on behalf of Duke University received actual notice that:

    a. Plaintiff was subjected to rape and sexual assault by Bishop;

    b. Plaintiff reported the rape to Duke University officials and entities, including Duke's Gender Violence Intervention Services.

    c. At the time of the rape and Plaintiff's report of it, Bishop was the live-in partner of the Coordinator of Duke's Gender Violence Intervention Services, Defendant Sheila Broderick.

    d. Defendant Broderick was living with Bishop in his home and seeing patients in his home at the time.

    e. Plaintiff was then repeatedly harassed and threatened by Broderick and Bishop who claimed that they could and did access Plaintiff's academic records, that no one at Duke or the Duke Police Department would believe Plaintiff's claim that Bishop raped her, and that Bishop and Broderick would force Plaintiff to be silent on the matter of Bishop's rape of her.

f. Plaintiff was denied confidential counseling services and access to the Duke Women's Center – which that Duke expressly promises to all Duke – in retaliation against Plaintiff for having reported the rape and sexual assault.

g. Plaintiff was summoned to a mandatory meeting that removed me from her curricular activities at Duke because Ms. Broderick falsely accused Plaintiff of stalking her. In this meeting, Plaintiff was threatened, intimidated, interrogated, and deceived by Duke University administrators acting at the direction of Ms. Broderick. In the same meeting, Plaintiff was forced to disclose, in the presence of her academic dean at Duke, that she had been raped by Mr. Bishop.

h. Upon information and belief, Broderick and Bishop, individually and in concert wrongfully disclosed confidential communications that Plaintiff made to the Duke Women's Center concerning the rape and sexual assault to Broderick, other University employees, and to Bishop.

i. Duke's Vice President of Student Affairs, Larry Moneta and his staff defended the foregoing breach of confidentiality on the false grounds that Plaintiff was not a "client of the Women's Center," despite knowing that Plaintiff confidentially reported Bishop's rape and sexual assault of her to the Women's Center and thereby became a client of the Women's Center; that such communications were confidential; and that those communications were wrongfully disclosed to numerous individuals, including the rapist himself.

j. Broderick and Bishop enlisted the aid of Duke Police Officer Greg Stotsenberg, who falsely claimed to have carried out an investigation of Plaintiff's report that Bishop raped and sexually assaulted her; that there was no evidence of the rape and assault; and made slanderous comments characterized Plaintiff's report of her rape as an "attempt[] to exact revenge." These false and defamatory

statements have become part of the public record through court proceedings in which other instances of Mr. Bishop's sexual misconduct are at issue.

k. Plaintiff was further retaliated against and harassed by Defendants and others acting on their behalf, who called Plaintiff "little girl", told Plaintiff she was different because of her age, and refused to protected Plaintiff from public defamation in the aftermath of her report that Bishop raped her.

l. When Plaintiff sought to contradict the defamatory statements, Defendants and others acting in concert with them caused Plaintiff to be placed on academic probation, to be blocked from attending meetings she is entitled to attend, and to withhold Plaintiff's invitations to meetings she was entitled to attend.

24. Defendant's response to Plaintiff's report of Bishop's rape and sexual assault, and the subsequent harassment and reataliatory conduct of Defendants and those acting in concert with them, was clearly unreasonable, evinced the institution's deliberate indifference to severe and pervasive sexual harassment suffered by Plaintiff, and otherwise violated Title IX.

25. As a result of Defendant's deliberate indifference and clearly unreasonable response to the severe and pervasive sexual harassment Plaintiff suffered, Plaintiff was excluded from participation in, denied the benefits of, and was subjected to discrimination in Defendant's educational programs and activities by, for example:

a. Plaintiff was unable to participate meaningfully in Defendant's educational and extracurricular programs and activities;

b. Plaintiff suffered a marked decline in her ability to learn and achieve academically;

c. Plaintiff ultimately could not participate in Defendants' educational programs and activities to such an extent that she believed that her only recourse was to transfer. But Plaintiff was then wrongfully placed on probation, which prevented her transfer to another institution;

d. In other ways to be shown in discovery and at trial.

26. As a direct and foreseeable result of all of the foregoing conduct and the conduct attributable to Defendants to be proven at trial, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited to economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

27. The conduct of Defendants giving rise to Plaintiff's entitlement to compensatory damages was accompanied by fraud, malice, and willful and wanton conduct.

28. All of Defendant Broderick's acts and omissions were condoned and ratified by Duke University officers and managing employees.

29. At all times relevant to this action, the conduct of the University officials, employees, and agents was done in the course of and in furtherance of their employment or agency with Duke University. As such, the foregoing conduct is imputed to Duke University pursuant to the doctrine of *respondeat superior*.

30. Plaintiff's damages were caused by the concurring tortious conduct of all Defendants and, Plaintiff seeks a judgment against all Defendants as joint-tortfeasors, jointly and severally.

I.

# INTERFERENCE WITH CIVIL RIGHTS
## (N.C. Gen. Stat. § 99D-1, *et seq.*)

*Against Duke, Broderick, and Bishop*

31. All other allegations in this Complaint are incorporated by reference as though fully set out here.

32. Defendants Duke University, Sheila Broderick, and Steven Bishop interfered with Plaintiff's civil rights by undertaking a course of conduct to prey on Plaintiff's status as a student under the authority of Duke and Broderick to subject Plaintiff to a hostile educational environment; to conceal from law enforcement and University authorities Mr. Bishop's rape and sexual assault of Plaintiff; to punish and otherwise retaliate against Plaintiff for reporting that Bishop raped and sexually assaulted her and for complaining that Ms. Broderick was engaged in covering up Mr. Bishop's criminal conduct through University employees, officials, and procedures; and preventing Plaintiff from transferring from Duke University by fabricating a basis to place her on probation; and subjecting Plaintiff to false accusations that she is "mentally ill" and otherwise subjecting Plaintiff to irreparable reputational harm in her professional community.

33. Defendants acted in furtherance of the foregoing course of conduct by acting affirmatively to directly injure the Plaintiff and their participation extended well beyond merely failing to prevent a third person's harmful conduct.

34. In acting in furtherance of their agreement to pursue the foregoing course of conduct, Defendants Duke, Broderick, and Bishop were motivated by gender

35. Defendants' agreement to pursue the foregoing course of conduct was designed to interfere with Plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States or North Carolina, or of a right secured

- 9 -

Case 1:17-cv-00603-WO-JLW  Document 4  Filed 06/29/17  Page 9 of 18

by a law of the United States, including Title IX, or North Carolina that enforces, interprets, or impacts on a constitutional right.

36. One or more of the Defendants, including Duke, Broderick, and Bishop used force, repeated harassment, and physical harm to commit an act in furtherance of the object of the conspiracy.

37. At least one of the foregoing acts in furtherance of the conspiracy constituted an attempt to interfere with Plaintiff's exercise or enjoyment of a right secured by a law of the United States, including but not limited to Title IX.

38. As a direct and foreseeable result of all of the foregoing conduct and the conduct attributable to Defendants to be proven at trial, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited to economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

39. The conduct of Defendants giving rise to Plaintiff's entitlement to compensatory damages was accompanied by fraud, malice, and willful and wanton conduct on the part of Broderick and Bishop.

40. All of Defendant Broderick's acts and omissions were condoned and ratified by Duke University officers and managing employees.

41. Plaintiff is therefore entitled to an award of compensatory damages, jointly and severally against all Defendants, and punitive damages pursuant to N.C. Gen. Stat. § 99D-1, *et seq.* and N.C. Gen. Stat. § 1D-1, *et seq.*, in an amount to be determined by a jury.

II.

## BREACH OF EDUCATIONAL CONTRACT

*Against Duke University*

42. All other allegations in this Complaint are incorporated by reference as though fully set out here.

43. Plaintiff and Duke University entered into an educational contract under which Plaintiff would pay tuition and other fees in exchange for educational and related services, including but not limited to counselling services and resources provided by the Duke Women's Center and rape-crisis intervention services.

44. Like all contracts formed under North Carolina law, the educational contract between Plaintiff and Duke included the implied covenant of good faith and fair dealing.

45. Duke breached its contract with Plaintiff by failing to deliver educational and related services described above when Plaintiff requested them after Defendant Bishop raped and sexually assaulted her and while Defendant Broderick, Bishop, and others acting in concert with them subjected Plaintiff to repeated harassment and retaliation for reporting and pressing her complaints reporting the rape and subsequent harassment.

46. Despite written promises to provide Plaintiff an array of services and resources in the event she suffered a sexual assault while enrolled at Duke, Duke provided none of those services, and, through Broderick and other employees acting in concert with Broderick, interfered with and blocked Plaintiff's access to those services and resources.

47. In addition to the breach of express promises in the educational contract, Duke also breached the implied covenant of good faith and fair dealing.

- 11 -

48. As a direct and foreseeable result of the foregoing and other breaches of the educational contract to be proven at trial, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited to the lost value of the services and resources that Duke promised to provide Plaintiff, other economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

49. The conduct of Defendants giving rise to Plaintiff's entitlement to compensatory damages was accompanied by fraud, malice, and willful and wanton conduct on the part of Broderick and Bishop.

50. All of Defendant Broderick's acts and omissions were condoned and ratified by Duke University officers and managing employees.

51. Plaintiff is therefore entitled to an award of compensatory damages, jointly and severally against all Defendants, and punitive damages against each Defendant, in amounts to be determined by a jury.

## III.
## UNFAIR OR DECEPTIVE TRADE PRACTICES
(N.C. Gen. Stat. §§ 75-1, *et seq.*)

*Against Duke University and Broderick*

52. All other allegations in this Complaint are incorporated by reference as though fully set out here.

53. As alleged herein, Defendants Broderick and Duke University, in concert with Defendant Bishop and other servants, employees, and agents of Duke University, engaged the acts and practices described in this Complaint.

54. Those acts and practices were unfair in that they were immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers like Plaintiff.

55. Those acts and practices were deceptive in that they had the capacity or tendency to deceive consumers like Plaintiff.

56. Those unfair and deceptive acts and practices were in or affected commerce.

57. As a direct and foreseeable result of the foregoing unfair and deceptive acts and practices, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited to economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

58. All of Defendant Broderick's acts and omissions were condoned and ratified by Duke University officers and managing employees.

59. Plaintiff is therefore entitled to an award of compensatory damages, jointly and severally against all Defendants, and treble or punitive damages (at Plaintiff's election) against each Defendant, in amounts to be determined by a jury.

## IV.
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*Against Duke, Broderick, and Bishop*

60. All other allegations in this Complaint are incorporated by reference as though fully set out here.

61. As alleged in this action Broderick, Bishop, and Duke University engaged in conduct that was extreme and outrageous.

- 13 -

Case 1:17-cv-00603-WO-JLW Document 4 Filed 06/29/17 Page 13 of 18

62. Defendants' conduct was is intended to cause severe emotional distress, and/or indicates a reckless indifference to the likelihood that such conduct will cause severe emotional distress; and

63. Defendants' conduct did cause Plaintiff to suffer severe emotional distress, including severe and disabling conditions diagnosable by professionals trained to do so.

64. As a direct and foreseeable result of all of the foregoing conduct and the conduct attributable to Defendants to be proven at trial, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited to economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

65. The conduct of Defendants giving rise to Plaintiff's entitlement to compensatory damages was accompanied by fraud, malice, and willful and wanton conduct on the part of Broderick and Bishop.

66. All of Defendant Broderick's acts and omissions were condoned and ratified by Duke University officers and managing employees.

67. Plaintiff is therefore entitled to an award of compensatory damages, jointly and severally against all Defendants, and punitive damages against each Defendant, in amounts to be determined by a jury.

# V.
# NEGLIGENCE

*Against Duke, Broderick, and Bishop*

68. All other allegations in this Complaint are incorporated by reference as though fully set out here.

69. Defendants voluntarily undertook the affirmative course of conduct described in this action.

70. At the time they undertook that course of action and acted in furtherance of it, Defendants had a duty to avoid foreseeable harms to others, including Plaintiff.

71. At the time they undertook that course of conduct and acted in furtherance of it, it was foreseeable that Plaintiff would suffer the harms alleged in the Complaint.

72. Defendants breached those duties of care to Plaintiff by failing to exercise due care to avoid the foreseeable harms to Plaintiff.

73. As a direct, proximate, and concurrent result of Defendants' negligence, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited to economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

74. The conduct of Defendants giving rise to Plaintiff's entitlement to compensatory damages was accompanied by fraud, malice, and willful and wanton conduct on the part of Broderick and Bishop.

75. All of Defendant Broderick's acts and omissions were condoned and ratified by Duke University officers and managing employees.

76. Plaintiff is therefore entitled to an award of compensatory damages, jointly and severally against all Defendants, and punitive damages against each Defendant, in amounts to be determined by a jury.

## VI.
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

*Against Duke, Broderick, and Bishop*

77. All other allegations in this Complaint are incorporated by reference as though fully set out here.

78. Defendants Duke University, Broderick, and Bishop, individually and in concert, negligently engaged in the conduct alleged in this Complaint.

79. At the time they engaged in that conduct, it was reasonably foreseeable that the conduct would cause Plaintiff to suffer severe emotional distress.

80. The conduct did in fact cause Plaintiff to suffer severe emotional distress.

81. Defendants' conduct did cause Plaintiff to suffer severe emotional distress, including severe and disabling conditions diagnosable by professionals trained to do so.

82. As a direct and foreseeable result of all of the foregoing conduct and the conduct attributable to Defendants to be proven at trial, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited to economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

83. The conduct of Defendants giving rise to Plaintiff's entitlement to compensatory damages for negligence was accompanied by fraud, malice, and willful and wanton conduct on the part of Broderick and Bishop.

84. All of Defendant Broderick's acts and omissions were condoned and ratified by Duke University officers and managing employees.

85. Plaintiff is therefore entitled to an award of compensatory damages, jointly and severally against all Defendants, and punitive damages against each Defendant, in amounts to be determined by a jury.

## JURY TRIAL DEMAND

86. Plaintiff respectfully demands a jury trial on all issues so triable in this action.

## PRAYER FOR RELIEF

87. Plaintiff respectfully prays that the Court enter a Judgment that includes, *inter alia*:

a. An Order declaring that Defendants, individually and jointly, violated and interfered with Plaintiff's civil rights;

b. An award of compensatory damages, jointly and severally, against Defendants;

c. An award of treble damages as allowed by law;

d. An award of punitive damages against each Defendant as allowed by law;

e. An award of the costs of this action, including attorneys' fees allowed by law;

f. Prejudgment and post-judgment interest on the award of damages; and

g. All other and further relief that the Court deems just and proper.

Respectfully submitted on this the 15th day of May, 2017.

Robert C. Ekstrand
N.C. Bar No. 26673
EKSTRAND & EKSTRAND LLP
110 Swift Avenue, Second Floor
Durham, North Carolina 27705
Tel: (919) 416-4590
Fax: (919) 416-4591
Counsel for Plaintiff, Colleen McClean