UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

1:17-CV-603-WO-JLW

| | |
|---|---|
| COLLEEN MCCLEAN,<br><br>     *Plaintiff*,<br><br>   *v.*<br><br>DUKE UNIVERSITY; SHEILA BRODERICK, *in her individual and official capacities; and* STEVEN THOMAS BISHOP, *in his individual capacity*,<br><br>     *Defendants.* | **FIRST AMENDED COMPLAINT**<br><br>JURY TRIAL DEMANDED |

ROBERT EKSTRAND
   Ekstrand & Ekstrand LLP
   110 Swift Avenue, 2nd Floor
   Durham, NC 27705
   (919) 416-4590
   rce@ninthstreetlaw.com
    Counsel for Plaintiff, Colleen McClean

`

58872

## PARTIES, JURISDICTION & VENUE

1.  Plaintiff COLLEEN MCCLEAN is a citizen and resident of Durham County, North Carolina.

2.  Defendant DUKE UNIVERSITY ("Duke") is a corporate educational institution formed and existing under the laws of North Carolina with its principal place of business in Durham County, North Carolina. At all times relevant to this Complaint, Duke was engaged in the business of providing, operating, managing, and controlling the delivery of educational, medical, psychological, and other related support services to students, including Plaintiff, in the State of North Carolina.

3.  Defendant SHEILA BRODERICK is sued in this action in her individual and official capacities. At all times relevant to this action, Ms. Broderick was a servant, employee, and/or agent of Duke, was acting in the course and scope of that service, employment, and agency and in furtherance of Duke's business interests. Upon information and belief, Ms. Broderick is a citizen and resident of Durham County, North Carolina.

4.  Defendant STEVEN THOMAS BISHOP is sued in this action in his individual capacity. At all times relevant to this action, Mr. Bishop was not employed by Duke in any capacity and was acting in furtherance of his own interests. Upon information and belief, Mr. Bishop is a citizen and resident of Durham County, North Carolina.

\* \* \*

5. Plaintiff commenced this action in the Durham County Superior Court on April 24, 2017 by filing an Application and Order and causing summonses to issue to each Defendant pursuant to Rule 3 of the North Carolina Rule of Civil Procedure.

6. Plaintiff timely filed her complaint pursuant to the Order and new summonses were issued by the Clerk of Durham County Superior Court. Before answering the Complaint, Defendant Duke University removed the action to this Court, and the time for any party to move for remand to state court has expired.

7. This Court has personal jurisdiction over Duke University.

8. This Court has personal jurisdiction over Ms. Broderick

9. This Court has personal jurisdiction over Mr. Bishop.

10. This Court has subject matter jurisdiction over this action.

11. Venue is proper in this district because Plaintiff resides there, Defendants reside there and regularly conduct business there.

## FACTS

12. Plaintiff was raped and sexually assaulted by Defendant Steven Bishop.

13. At the time, Plaintiff was enrolled in Duke University's School of Medicine, with concurrent enrollment in Duke University's Graduate School.

14. Plaintiff reported the rape to police as a blind report.

15. Plaintiffconfronted Mr. Bishop, and told him that she was taking steps to report his conduct and stop him from doing it again. In response, Bishop went into a rage and threatened Ms. McClean.

- 3 -

16. Subsequently, Mr. Bishop told Plaintiff that Ms. Broderick was his girlfriend; that Ms. Broderick worked at Duke University's Women's Center (where she was the coordinator of Duke University's gender violence intervention services); that Ms. Broderick would use her position and influence to obstruct Plaintiff's report of his sexual violence and otherwise protect Mr. Bishop from the consequences of it; that Ms. Broderick would take steps to destroy Plaintiff's personal and professional reputation and credibility and otherwise ensure that no one would believe her report that he raped her; and that Ms. Broderick had already accessed Plaintiff's confidential records maintained by Duke and disclosed them to Mr. Bishop. Mr. Bishop concluded by stating "we will make you be quiet."

17. At the time Mr. Bishop made those threats, Ms. Broderick was, in fact, Duke University's Coordinator of Gender Violence Intervention Services, she had the ability and authority to control Duke University's response to reports of sexual violence involving Duke students, she was involved in a sexual relationship with Mr. Bishop, she maintained personal belongings in his home, and she was regularly seeing private counselling clients there.

18. Bishop continued to harass, threaten, and taunt Plaintiff in communications to Plaintiff. In one such communication, Mr. Bishop told Plaintiff to contact Ms. Broderick and gave her Ms. Broderick's phone number.

19. Plaintiff did not know if Mr. Bishop was lying about Ms. Broderick at the time he made those threats.

20. Plaintiff contacted several entities outside of Duke to obtain support, assistance, and intervention she needed as a result of the sexual assault, including the Durham Crisis Response Center (DCRC) and national hotlines, which referred

Plaintiff to Ms. Broderick because she was the coordinator of gender violence intervention services for Duke students.

21.   Plaintiff then sent Ms. Broderick a letter reporting that she had been raped by Mr. Bishop; that Mr. Bishop exhibited behaviors suggesting he may be a predator posing a risk to other women in the community; that Mr. Bishop had threatened Plaintiff; and that Mr. Bishop claimed he would enlist Ms. Broderick in carrying out his threats.

22.   In her letter, Plaintiff asked Ms. Broderick, in her capacity as Duke's coordinator of gender violence intervention services, to assist her in accessing the services she needed to recover from the assault, report it, and to continue in her doctorate program at the University.

23.   Ms. Broderick did not assist Plaintiff in any way, nor did she refer Plaintiff to another administrator within the university who would coordinate the delivery of gender violence intervention services to Plaintiff.

24.   Plaintiff subsequently called Ms. Broderick to follow up on her letter, and Ms. Broderick referred Plaintiff to her supervisor, Ms. Stephanie Helms-Pickett. Ms. Helms-Pickett, in turn, declined to offer Plaintiff any of the services the University offers to all students in Plaintiff's circumstances, and advised her to obtain it outside of the university.

25.   Ms. Broderick later testified that she understood Plaintiff's letter as saying, "I am a student. I've been raped. I need your services."

26.   Shortly after receiving Plaintiff's letter, Ms. Broderick began making false claims that Plaintiff was "stalking" her and claimed that she filed a report with the Duke Police Department.

27.   One week later, a colleague of Ms. Broderick who was also employed in Duke's Student Affairs division, Ms. Christine Pesetski, told Plaintiff's Advisory Dean in the Medical School that Plaintiff was required to attend a mandatory meeting the following day. Ms. Pesetski declined to disclose the reason or purpose of the meeting.

28.   At the meeting Ms. Pesetski first stated that she had spoken to Sheila Broderick.   When the plaintiff indicated to Ms. Pesetski that she had made a confidential report of sexual assault to Ms. Broderick and was uncomfortable discussing such in front of her Dean, Ms. Pesetski was unaware of plaintiff's reason for interaction with Ms. Broderick.

29.   Ms. Pesetski then interrogated Plaintiff about her interactions with Mr. Bishop, the nature of their relationship, what Plaintiff intended to do about the fact that he sexually assaulted her, whether Plaintiff had filed a police report, and why Plaintiff reported the rape to Ms. Broderick. Ms. Pesetski did not ask Plaintiff about her report that Mr. Bishop raped her.

30.   Ms. Pesetski did not disclose to Plaintiff that Ms. Broderick accused Plaintiff of "stalking" her, or that Ms. Broderick had filed a report to that effect with the Duke Police. Rather, Ms. Pesetski fabricated a reason for the meeting with Plaintiff that other staff members reported to be factually incorrect.

31.   Ms. Broderick later testified that she had no factual basis to claim that Plaintiff was stalking her or anyone else.

32. When Plaintiff became concerned that her confidential letter to Ms. Broderick had been disclosed without her authorization and against her interests, Ms. Amy Powell, a colleague of Ms. Broderick in the Student Affairs division, advised Plaintiff that her letter reporting the details of her sexual assault had been disclosed to others, including Ms. Pesetski and that Duke would not treat her letter as a confidential communication of any kind because Plaintiff was "not a client of the Women's Center."

33. Ms. Powell also told Plaintiff that Ms. Pesetski was not investigating Plaintiff's report of Mr. Bishop's sexual assault or Plaintiff's safety concerns, but rather, Ms. Pesetski was investigating Ms. Broderick's claim that Plaintiff was stalking her.

34. Shortly thereafter, Plaintiff was asked to provide an affidavit in connection with a custody matter involving Mr. Bishop and one of his ex-wives. Plaintiff reported the sexual assault in her affidavit, and Mr. Bishop was ordered to submit to a psycho-sexual evaluation by the Court.

35. In the course of the psychosexual evaluation, Mr. Bishop enlisted the testimony of a colleague of Ms. Broderick in the Duke Police Department, Officer Greg Stotsenberg, to impugn Plaintiff's credibility and her report of Mr. Bishop's sexual assault.

36. The report of Mr. Bishop's psychosexual evaluation revealed that Officer Stotsenberg claimed, falsely, that he investigated Plaintiff's report that Mr. Bishop raped her, and on that basis made false statements designed to impugn Plaintiff's credibility and that of her report. Officer Stotsenberg told Mr. Bishop's evaluator that, "after investigating the matter, there was no evidence of sexual assault" and, instead,

Plaintiff "became jealous and enraged when she found out about Sheila [Broderick]" and "attempted to exact revenge" by reporting that Mr. Bishop raped her.

37.    Officer Stotsenberg never interviewed or questioned Plaintiff at all; not about her report that Ms. Bishop raped her or her concerns that he could be leveraging his relationship with Ms. Broderick to prey on other women in the University community in the same way. Upon information and belief, no investigation of Plaintiff's report was ever conducted by Officer Stotsenberg, the Duke Police Department, or Duke University.

38.    Prior to learning of Officer Stotsenberg's false statements in the report of Mr. Bishop's psychosexual evaluation, Plaintiff had received express assurances by Major Sarajane Raines, Officer Stotsenberg's supervisor in the Duke Police Department, that Officer Stotsenberg had not discussed  Plaintiff with anyone outside of Duke and that he was prohibited by law from doing so. But at the time of those assurances, Officer Stotsenberg had already made his false statements impugning Plaintiff's report to Mr. Bishop's evaluator.

39.    Knowing that Officer Stotsenberg's false statements concerning Plaintiff would be used by Mr. Bishop in court proceedings involving Mr. Bishop's custody of a minor child, Plaintiff contacted Major Raines and requested that she direct Officer Stotsenberg to retract his false statements and correct any public record of them. Neither was done, and Officer Stotsenberg's false statements impugning the credibility of Plaintiff and her report remain a part of the record of those proceedings.

40.    Upon information and belief, Officer Stotsenberg made similar false statements concerning Plaintiff and her report of Mr. Bishop's rape to Mr. Bishop's employers, former spouses of Mr. Bishop, custodial officials, and child abuse

investigators involved in Mr. Bishop's case for the purpose of protecting Mr. Bishop from adverse employment action and impeding the appropriate adjudication of the custody of the minor child at issue in the case.

41.    Mr. Bishop contacted one of Plaintiff's fellow students and made false and defamatory statements about Plaintiff in order to induce the student to lodge a complaint against Plaintiff. The student did so, and, as a result Plaintiff was subjected to disciplinary proceedings and a probationary status that prevented her from being able to transfer from Duke and subjected her to harassment, public embarrassment, and loss of opportunities and positions within the University.

42.    Throughout this time, Ms. Broderick's relationship with Mr. Bishop continued. In March of 2014, Ms. Broderick had moved her private practice into Mr. Bishop's home, and by September of 2005, she began living with Mr. Bishop in his home permanently.

43.    After Plaintiff reported that Mr. Bishop sexually assaulted her – continuing to this day – Ms. Broderick, Mr. Bishop, and Duke employees and agents acting in concert with them, engaged in the foregoing course of conduct to retaliate against Plaintiff because she reported that Mr. Bishop raped her and sought assistance from the University in recovering from the assault and in holding Mr. Bishop accountable. Among other things, they prevented Plaintiff from accessing those services, which Duke promises to make available to all students subjected to sexual violence, and they obstructed Plaintiff's efforts to hold Mr. Bishop accountable and to address the risk that Mr. Bishop posed to other women in the University community. They made and corroborated false claims that Plaintiff was "stalking" Ms. Broderick and/or Mr. Bishop. They made false claims that Plaintiff's report was investigated by police, and, knowing it would become part of a public record, falsely asserted that the

investigation revealed that Plaintiff's report was an "attempt to extract revenge" made by a "jealous and enraged" woman. They engaged in conduct designed to harass and intimidate Plaintiff, to subject Plaintiff to a hostile educational environment at Duke University, to degrade and defame Plaintiff for the purpose of impugning Plaintiff's reputation, undermining the credibility of Plaintiff's report of Mr. Bishop's sexual violence, and preventing or obstructing any investigation of Mr. Bishop.

44. In furtherance of their agreement pursue that unlawful course of conduct Defendants, individually, in concert, and with other employees of Duke University, engaged in the acts and omissions alleged above.

45. In October of 2015, Plaintiff filed a formal complaint with the United States Department of Education's Office for Civil Rights (OCR).

46. Upon information and belief, OCR notified Duke University of Plaintiff's complaint, and Ms. Broderick was notified of it by University administrators.

47. Shortly thereafter, Ms. Broderick told a colleague that she had already destroyed Plaintiff's reputation within Duke University and that she intended to destroy Plaintiff's reputation in her professional community once she graduates from the School of Medicine. While saying this, Ms. Broderick was holding up a pile of documents relating to Plaintiff that she had collected for that purpose.

48. The colleague was stunned and said, "Sheila, you wouldn't." Ms. Broderick replied, "f**k yes, I will." The colleague persisted, and told Ms. Broderick that she could not do that to a victim of sexual violence. Ms. Broderick replied, "you just watch me" and added that she was "counting the days" until Plaintiff graduates.

49.   The colleague reported Ms. Broderick's past and planned retaliation against Plaintiff to Ms. Broderick's supervisors at Duke University, who were managing employees of the University and were already aware of Ms. Broderick's retaliatory conduct toward Plaintiff.

50.   Upon information and belief, Ms. Broderick's supervisors took no meaningful action in response to that report of Ms. Broderick's past and planned retaliation against Plaintiff; rather, they ratified and condoned Ms. Broderick's retaliatory conduct.

51.   Soon thereafter, the colleague was herself subjected to retaliatory conduct by Ms. Broderick, including similar efforts to impugn her reputation and undermine her credibility, until the colleague felt compelled to resign and did so.

## I. TITLE IX VIOLATIONS
### (42 U.S.C. § 1681, *et seq*.)
*Against Duke University*

52. Duke University is an "educational institution" that operates "education program[s] . . . receiving Federal financial assistance" as those phrases are used in Title IX and 20 U.S.C. § 1681, *et seq.*

53. Duke University is therefore obligated to comply with Title IX as well as the rules, regulations, and guidance promulgated by the United States Department of Education to implement and enforce Title IX.

54.   Officials and employees authorized to respond to reports of sexual violence on behalf of Duke University received actual notice of Plaintiff's report that she was subjected to severe and pervasive sexual violence, sexual harassment, and gender

based discrimination, including the facts and circumstances alleged in Paragraphs 12-51. For example, those officials and employees were on notice of: Plaintiff's report that she was raped by Mr. Bishop; Mr. Bishop's relationship with Ms. Broderick; Mr. Bishop's threats to leverage his relationship with Ms. Broderick to retaliate against Plaintiff; Ms. Broderick's acquiescence in those threats; the conspiracy among Mr. Bishop, Ms. Broderick, and her colleagues within the University to retaliate against Plaintiff, to falsely accuse Plaintiff of "stalking" Ms. Broderick, to impugn Plaintiff's reputation and credibility in order to prevent an investigation of her report and to foment a hostile educational environment for Plaintiff; their acts in furtherance of that conspiracy; and Ms. Broderick's intention and plan to continue to act in furtherance of the conspiracy after Plaintiff graduates by impugning her reputation and credibility in her professional community, including the acts Ms. Broderick has already taken in furtherance of that plan.

55. Duke University responded to Plaintiff's reports of sexual violence and the hostile educational environment to which Plaintiff was subjected by participating in, acquiescing in, condoning, and ratifying the conduct and conspiracy alleged in Paragraphs 12-51.

56. Duke University's response to Plaintiff's reports was clearly unreasonable, and evinced a deliberate indifference to the severe and pervasive sexual harassment and the hostile educational environment to which Plaintiff was subjected.

57. As a result of Duke University's clearly unreasonable response to the severe and pervasive sexual harassment and the hostile educational environment to which Plaintiff was subjected, Plaintiff was excluded from participation in, denied the benefits of, and was subjected to discrimination in Defendant's educational programs and activities by, for example:

a. Plaintiff was unable to participate meaningfully in Defendant's educational and extracurricular programs and activities;

b. Plaintiff suffered a marked decline in her ability to learn and achieve academically;

c. Plaintiff ultimately could not participate in Defendants' educational programs and activities to such an extent that she believed that her only recourse was to transfer. But Plaintiff was then wrongfully placed on probation, which prevented her transfer to another institution;

d. In other ways to be shown at trial.

58. As a direct and foreseeable result of all of the foregoing conduct and the conduct attributable to Defendants to be proven at trial, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited to economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

59. The conduct of Defendants giving rise to Plaintiff's entitlement to compensatory damages was accompanied by fraud, malice, and willful and wanton conduct. Further, the misconduct alleged herein was condoned and ratified by Duke University officers and managing employees.

60. At all times relevant to this action, the conduct of the University officials, employees, and agents alleged herein was done in the course of and in furtherance of their employment or agency with Duke University. As such, the foregoing conduct is imputed to Duke University pursuant to the doctrine of *respondeat superior*.

61.  Plaintiff's damages were caused by the concurring tortious conduct of all Defendants and, Plaintiff seeks a judgment against all Defendants as joint-tortfeasors, jointly and severally.

## II. INTERFERENCE WITH CIVIL RIGHTS

(N.C. GEN. STAT. § 99D-1, *et seq.*)

*Against Broderick, Bishop, and Duke University*

62.  All other allegations in this Complaint are incorporated by reference as though fully set out here.

63.  Defendants Duke University, Sheila Broderick, and Steven Bishop interfered with Plaintiff's civil rights by undertaking a course of conduct to prey on Plaintiff's status as a student under the authority of Duke and Broderick to subject Plaintiff to a hostile educational environment; to conceal from law enforcement and University authorities Mr. Bishop's rape and sexual assault of Plaintiff; to retaliate against Plaintiff for reporting that Bishop raped and sexually assaulted her; and for complaining that Ms. Broderick was engaged in covering up Mr. Bishop's criminal conduct through University employees, officials, and procedures; and preventing Plaintiff from transferring from Duke University by fabricating a basis to place her on probation; and subjecting Plaintiff to false accusations that she is "mentally ill" and otherwise subjecting Plaintiff to irreparable reputational harm in her professional community.

64.  Defendants acted in furtherance of the foregoing course of conduct by acting affirmatively to directly injure the Plaintiff and their affirmative participation extended well beyond merely failing to prevent a third person's harmful conduct.

65. In acting in furtherance of their agreement to pursue the foregoing course of conduct, Defendants Duke, Broderick, and Bishop were motivated by gender

66. Defendants' agreement to pursue the foregoing course of conduct was designed to interfere with Plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States or North Carolina, or of a right secured by a law of the United States, including Title IX, or North Carolina that enforces, interprets, or impacts on a constitutional right.

67. One or more of the Defendants, including Duke, Broderick, and Bishop used force, repeated harassment, and physical harm to commit an act in furtherance of the object of the conspiracy.

68. At least one of the foregoing acts in furtherance of the conspiracy constituted an attempt to interfere with Plaintiff's exercise or enjoyment of a right secured by a law of the United States, including but not limited to Title IX.

69. As a direct and foreseeable result of all of the foregoing conduct and the conduct attributable to Defendants to be proven at trial, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited to economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

70. The conduct of Defendants giving rise to Plaintiff's entitlement to compensatory damages was accompanied by fraud, malice, and willful and wanton conduct on the part of Broderick and Bishop, which were known to and condoned and ratified by Duke University officers and managing employees.

71. Plaintiff is therefore entitled to an award of compensatory damages, jointly and severally against all Defendants, and punitive damages pursuant to N.C. Gen. Stat. § 99D-1, *et seq.* and N.C. Gen. Stat. § 1D-1, *et seq.*, in an amount to be determined by a jury.

### III. BREACH OF EDUCATIONAL CONTRACT

*Against Duke University*

72. All other allegations in this Complaint are incorporated by reference as though fully set out here.

73. Plaintiff and Duke University entered into an educational contract under which Plaintiff would pay tuition and other fees in exchange for educational and related services, including but not limited to an array of gender violence intervention and counselling services for any student that is subjected to sexual violence.

74. Like all contracts formed under North Carolina law, the educational contract between Plaintiff and Duke included the implied covenant of good faith and fair dealing.

75. Duke breached its contract with Plaintiff by failing to deliver educational and related services described above when Plaintiff requested them after Defendant Bishop raped and sexually assaulted her and while Defendant Broderick, Bishop, and others acting in concert with them subjected Plaintiff to repeated harassment and retaliation for reporting and pressing her complaints reporting the rape and subsequent harassment.

76. Despite written promises to provide Plaintiff an array of services and resources in the event she suffered a sexual assault while enrolled at Duke, Duke

- 16 -

provided none of those services, and, through Broderick and other employees acting in concert with Broderick, interfered with and blocked Plaintiff's access to those services and resources.

77. In addition to the breach of express promises in the educational contract, Duke also breached the implied covenant of good faith and fair dealing.

78. As a direct and foreseeable result of the foregoing and other breaches of the educational contract to be proven at trial, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited to the lost value of the services and resources that Duke promised to provide Plaintiff, other economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

79. The conduct of Defendants giving rise to Plaintiff's entitlement to compensatory damages was accompanied by fraud, malice, and willful and wanton conduct on the part of Broderick and Bishop, which was condoned and ratified by Duke University officers and managing employees.

80. Plaintiff is therefore entitled to an award of compensatory damages, jointly and severally against all Defendants, and punitive damages against each Defendant, in amounts to be determined by a jury.

## IV. Unfair and Deceptive Trade Practices

(N.C. Gen. Stat. §§ 75-1, *et seq.*)

*Against Duke University and Broderick*

81. All other allegations in this Complaint are incorporated by reference as though fully set out here.

82. As alleged herein, Defendants Broderick and Duke University, in concert with Defendant Bishop and other servants, employees, and agents of Duke University, engaged the acts and practices described in this Complaint.

83. Those acts and practices were unfair in that they were immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers like Plaintiff.

84. Those acts and practices were deceptive in that they had the capacity or tendency to deceive consumers like Plaintiff.

85. Those unfair and deceptive acts and practices were in or affected commerce.

86. As a direct and foreseeable result of the foregoing unfair and deceptive acts and practices, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited to economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

87. All of Defendant Broderick's acts and omissions were condoned and ratified by Duke University officers and managing employees.

88. Plaintiff is therefore entitled to an award of compensatory damages, jointly and severally against all Defendants, and treble or punitive damages (at Plaintiff's election) against each Defendant, in amounts to be determined by a jury.

## V INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *Against Bishop, Broderick and Duke University*

89. Every allegation in this Complaint is incorporated by reference as though fully set out here.

90. Bishop, Broderick, and Duke University through its agents and employees, engaged in extreme and outrageous conduct that was intended to cause severe emotional distress and evinces their reckless indifference to the likelihood that their conduct would cause Plaintiff to suffer severe emotional distress.

91. Defendants' conduct did, in fact, cause Plaintiff to suffer severe emotional distress. Plaintiff has suffered severe and disabling emotional conditions that are recognized and diagnosable as such by professionals trained to do so, including but not limited to adjustment disorder, stress related peripheral nervous dysfunction, autoimmune flares, suicidal ideation, and other debilitating symptoms that continue to require regular counseling, medical therapy, and other treatment from licensed professionals.

92. As a direct and foreseeable result of the severe emotional distress Defendants have subjected her to, Plaintiff has suffered and continues to suffer the compensable harms described herein, including but not limited to economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of

discretionary time to earn additional income, pain, suffering, and emotional trauma, and medical expenses.

93. The conduct giving rise to Plaintiff's entitlement to compensatory damages was accompanied by fraud, malice, and willful and wanton conduct on the part of Broderick and Bishop, individually and in concert.

94. The tortious conduct of Mr. Bishop and Ms. Broderick's alleged herein were known to and condoned or ratified by Duke University officers and managing employees.

95. Therefore, Plaintiff is entitled to an award of compensatory damages, jointly and severally, against all Defendants, and an award of punitive damages against each Defendant, in amounts to be determined by the jury.

## VI . NEGLIGENCE

*Against Broderick, Bishop and Duke University*

96. All other allegations in this Complaint are incorporated by reference as though fully set out here.

97. Defendants voluntarily undertook the affirmative course of conduct described in this action.

98. At the time they undertook that course of action and acted in furtherance of it, Defendants had a duty to avoid foreseeable harms to others, including Plaintiff.

99. At the time they undertook that course of conduct and acted in furtherance of it, it was foreseeable that Plaintiff would suffer the harms alleged in the Complaint.

100.     Defendants breached those duties of care to Plaintiff by failing to exercise due care to avoid the foreseeable harms to Plaintiff.

101.     As a direct, proximate, and concurrent result of Defendants' negligence, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited to economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

## VII   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### *Against Duke, Broderick, and Bishop*

102. All other allegations in this Complaint are incorporated by reference as though fully set out here.

103. Defendants Duke University, Broderick, and Bishop, individually and in concert, negligently engaged in the conduct alleged in this Complaint.

104. At the time they engaged in that conduct, it was reasonably foreseeable that the conduct would cause Plaintiff to suffer severe emotional distress.

105. The conduct did in fact cause Plaintiff to suffer severe emotional distress.

106. Defendants' conduct did cause Plaintiff to suffer severe emotional distress, including severe and disabling conditions diagnosable by professionals trained to do so.

107. As a direct and foreseeable result of all of the foregoing conduct and the conduct attributable to Defendants to be proven at trial, Plaintiff suffered and continues to suffer the compensable harms described above, including but not limited

to economic losses, lost earnings, lost earning capacity, reputational harm, lost educational expenses, loss of discretionary time to earn additional income, severe and disabling emotional harm, and medical expenses.

108. The conduct of Defendants giving rise to Plaintiff's entitlement to compensatory damages for negligence was accompanied by fraud, malice, and willful and wanton conduct on the part of Broderick and Bishop, which was known to and condoned and ratified by Duke University officers and managing employees.

109. Plaintiff is therefore entitled to an award of compensatory damages, jointly and severally against all Defendants, and punitive damages against each Defendant, in amounts to be determined by a jury.

## JURY TRIAL DEMAND

110. Plaintiff respectfully demands a jury trial on all issues so triable in this action.

## PRAYER FOR RELIEF

111. Plaintiff respectfully prays that the Court enter a Judgment that includes, *inter alia*:

    a. An Order declaring that Defendants, individually and jointly, violated and interfered with Plaintiff's civil rights;

    b. An award of compensatory damages, jointly and severally, against Defendants;

    c. An award of treble damages as allowed by law;

    d. An award of punitive damages against each Defendant as allowed by law;

e. An award of the costs of this action, including attorneys' fees allowed by law;

f. Prejudgment and post-judgment interest on the award of damages; and

g. All other and further relief that the Court deems just and proper.

Respectfully submitted on this the 17th day of August, 2017.

/s/ Robert C. Ekstrand
Robert C. Ekstrand
N.C. Bar No. 26673
EKSTRAND & EKSTRAND LLP
110 Swift Avenue, Second Floor
Durham, North Carolina 27705
Tel: (919) 416-4590
Fax: (919) 416-4591
rce@ninthstreetlaw.com
Counsel for Plaintiff, Colleen McClean

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

1:17-CV-603-WO-JLW

| | |
|---|---|
| COLLEEN MCCLEAN,<br><br>     *Plaintiff,*<br><br>     *v.*<br><br>DUKE UNIVERSITY; SHEILA BRODERICK, *in her individual and official capacities; and* STEVEN THOMAS BISHOP, *in his individual capacity,*<br><br>     *Defendants.* | **CERTIFICATE OF SERVICE** |

I certify that on August 17, 2017, Plaintiff's First Amended Complaint was electronically filed with the Court's CM/ECF System, which will issue a Notice of Electronic Filing (NEF) to counsel of record for every party registered to receive NEFs through the Court's CM/ECF System.

I further certify that every party to this action has at least one counsel of record registered to receive NEFs in this action.

/s/ Robert C. Ekstrand
Robert C. Ekstrand
*Counsel for Plaintiff*

- 24 -